IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETE P. GARCIA,

Plaintiff, No. CIV S-09-3432 KJM DAD

vs.

AMERISOURCE BERGEN,

Defendant.

__________________________________/

Plaintiff's complaint alleges discrimination in employment based on national origin and sex, 42 U.S.C. § 2000e-2 (Title VII), age discrimination in employment, 29 U.S.C. § 621 (ADEA), and breach of the implied covenant of good faith and fair dealing.

On April 6, 2011, the court heard argument on defendant Amerisource Bergen's motion for summary judgment and plaintiff Pete Garcia's motion to continue the hearing on the motion to allow him to conduct additional discovery. Kristen Longo of Dooley, Herr, Peltzer & Richardson appeared for plaintiff; Matthew Farmer of Littler Mendelson appeared for defendant. At hearing, plaintiff's counsel confirmed, as indicated in his briefing, that plaintiff concedes his third cause of action is preempted by Section 301 of the Labor-Management Relations Act. The court thus addresses defendant's motion as to only the other, Title VII and ADEA causes of action.

I. Motion To Continue Summary Judgment

Plaintiff asks the court to continue or defer ruling on the motion for summary judgment to allow him to conduct additional discovery he says is crucial to the opposition for summary judgment.

Rule 56(d) of the Federal Rules of Civil Procedure permits a court to deny or continue determination of a motion for summary judgment "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Plaintiff's counsel has submitted a declaration averring that defendant has presented several declarations that characterize DEA Senior Diversion Investigator Brian Glaudel's reaction to a videotape allegedly showing plaintiff's theft of drugs in a manner different than Glaudel's own declaration and that, as a result, he needs to depose Glaudel. Counsel also avers he must depose plaintiff's union representative, because of defendant's claim that the union declined to challenge plaintiff's termination. Finally, counsel seeks to depose several other employees of Amerisource Bergen who were interviewed in connection with the investigation of plaintiff's alleged theft of drugs; he does not suggest what he hopes to learn from these employees except information "relevant to this action." Declaration of Leonard C. Herr (Herr Decl.), ECF No. 44-1.

Defendant has opposed the motion, noting that plaintiff's counsel called two days before his opposition to the motion for summary judgment was due, asking for a stipulation to an extension of time. Declaration of Ryan Eddings (Eddings Decl.), ECF No. 46 ¶ 7.[1] Defendant's counsel has also presented a copy of plaintiff's initial disclosure, dated February 25, 2010, which identifies the witnesses plaintiff only now seeks to depose as individuals likely to have discoverable information. *Id.* at 12-13. Finally, counsel notes that he took plaintiff's

/////

[1] The court refers to the pagination assigned by its ECF system.

deposition in March 2010 and plaintiff mentioned a meeting with Mr. Glaudel and with his union representative, Mr. Skjelstad. *Id.* ¶¶ 5-6.

In order to justify a continuance or denial of summary judgment under Rule 56(d), a party must satisfy the following requirements:

> (1) it has set forth in affidavit form the specific facts it hopes to elicit through further discovery; (2) the facts sought exist; and (3) the sought after facts are essential to oppose summary judgment.

*Family Home and Finance Center v. Federal Home Loan Mortgage Corporation*, 525 F.3d 822, 827 (9th Cir. 2008). The party seeking the continuance must also show that it diligently pursued previous opportunities for discovery. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994); *compare Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980) (motion improperly denied when party had "no previous opportunity to develop evidence . . . crucial to material issues in the case. . . .").[2]

Plaintiff has not satisfied any of the requirements for a continuance. First, beyond a general description of his hope to explore the differences between Glaudel's own declaration and the other characterizations of Glaudel's investigation, he has not suggested what evidence he hopes to develop by deposing the union representative or plaintiff's coworkers. Second, he has completely neglected to suggest how this unidentified information will assist him in opposing summary judgment. Finally, he has utterly failed to demonstrate diligence, in light of the fact that he identified all of these deponents in his initial disclosures more than a year ago. *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (motion properly denied when declaration did not identify the specific facts discovery would reveal or how those facts were crucial to the opposition).

/////

[2] These cases cite to Rule 56(f). The rule was renumbered and rewritten, but without substantive change, effective December 1, 2010.

II. Summary Judgment Standards Under Rule 56

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3] The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

/////

[3] Rule 56 was amended, effective December 1, 2010. However, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010 amendments.

issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

III. Evidentiary Objections

A court may consider only admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Defendant objects to portions of plaintiff's declaration, while plaintiff objects to much of defendant's evidence. The court addresses relevance objections to the extent it will rely on the challenged evidence.

A. Exhibits A, B & C To Howie Declaration

Defendant has submitted the declaration of Ken Howie, the Human Resources Manager for defendant's Sacramento Distribution Center, along with three exhibits. Plaintiff objects that these three exhibits lack foundation. Defendant argues that they are business records.

Exhibit A is a seniority list that Howie created in 2008. He says "[p]art of my job duties require that I manage, create, update and maintain seniority lists for the Sacramento Distribution Center. Consequently, I have access to numerous seniority lists, from various points in time. . . . [¶] The closest seniority list in existence . . . to when Garcia's employment was terminated . . . is a list . . . I created on or about July 21, 2008, and maintain it in the ordinary course of business." Declaration of Ken Howie (Howie Decl.), ECF No. 38 ¶¶ 6-7. He also avers that the seniority ranking of union employees is important because a variety of benefits flow from the ranking. *Id.* ¶ 5.

To qualify as a business record under Rule 803(6) of the Federal Rules of Evidence, the record must meet two foundational facts: "'the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity.'" *Sea-Land Service, Inc. v. Lozen*

/////

*International, LLC*, 285 F.3d 808, 819 (9th Cir. 2002) (quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir.1985)). Exhibit A qualifies as such a record.

Exhibits B and C are charts of employee demographic data that Howie compiled from information maintained by the company. Howie Decl. ¶¶ 10-12. Howie does not suggest that the business relies on these charts in any way and it appears that they were created simply as illustrative for purposes of this lawsuit. They do not qualify as business records and will not be considered. *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) ("a document prepared for purposes of litigation is not a business record . . . .").

B. Portions Of Declaration Of John DePietro

Defendant also submits the declaration of John DiPietro, Vice President Distribution Center Manager. DePietro avers that,

> Ms. Todd reviewed the video surveillance and told me (without me first telling her my opinions) she believed it showed Garcia taking, or otherwise diverting, the missing controlled substances. Ms. Todd also opined that based on the video surveillance and the corresponding shortages in the cage area to which Garcia was assigned, Garcia was the mostly likely person responsible for the missing controlled substances. Under the circumstances, as she conveyed to me, she believed Garcia's employment should be terminated.

Declaration of John DePietro (DePietro Decl.), ECF No. 40 ¶ 7. Plaintiff objects to this statement as hearsay.

A statement, other than one made by a declarant testifying at trial, is hearsay if it is offered for the truth of the matter asserted. FED. R. EVID. 801(c). Defendant is not offering Ms. Todd's statement to prove that plaintiff was in fact responsible for the missing drugs but rather to show the motivation for DePietro's decision to fire Garcia. The court will consider the statement for this purpose only.

C. Plaintiff's Declaration

In its Reply Statement Of Undisputed Facts, defendant takes issue with several portions of plaintiff's declaration. Plaintiff avers, for example, that other people had worked in

the cage around the time of the counts that came up short; that other people, who were neither Mexican nor over 40, were overlooked as possible suspects; and that other people who had stolen or diverted drugs had been given second chances. Declaration of Pete Garcia (Garcia Decl.), ECF No. 47-1 at 2-3. Defendant objects that there is no foundation for these statements. *See* ECF No. 51 at 3-4.

Under Federal Rule of Civil Procedure 56(c)(4), an affidavit offered in support of or opposition to summary judgment "must be made on personal knowledge . . . and show that affiant or declarant is competent to testify on the matters stated." Plaintiff has not described how he knows others were on duty around the time of the count, as he does not say when the count occurred. In addition, he has not explained or provided specific factual support for his claim that other people were not investigated or that others accused of theft had been given second chances with the company. The court will not consider these portions of plaintiff's declaration. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001); *Drake v. Minnesota Mining & Manufacturing Company*, 134 F.3d 878, 887 (7th Cir. 1998).

IV. Undisputed Facts

Amerisource Bergen distributes pharmaceutical products, including controlled substances, from its Sacramento Distribution Center. Reply Statement of Undisputed Facts, ECF No. 51 ¶ 2. Its operations are regulated by the state and federal government and are monitored by the federal Drug Enforcement Agency (DEA). ECF No. 51 ¶ 3. Amerisource Bergen has developed practices and procedures in order to comply with government regulation of controlled substances; these include the locking and storage of controlled substances in a cage, as well as video surveillance, all of which were in place in July 2008. ECF No. 51 ¶ 4. Amerisource Bergen must keep accurate count of controlled substances and report any loss or theft of such substances to the government. ECF No. 51 ¶ 5. Accordingly, it performs daily "blind" or "cycle" counts to track controlled substances. *Id*. According to John Jessee, Manager of

/////

Regulatory Compliance, any variance between the count and inventory is reviewed by regulatory compliance personnel. Declaration of John Jessee (Jessee Decl.), ECF No. 39 ¶ 10.

On the morning of July 7, 2008, compliance personnel notified Jessee that two bottles of Hydrocodone were missing from the cage area. *Id*. ¶ 12. Plaintiff Garcia had worked a swing shift, beginning on July 6 and ending at 3:30 a.m. on July 7, and had worked in the cage before the variance was found. *Id*. Jessee began an investigation. *Id*.

On July 8, 2008, Jessee was told a bottle of Alprazolam and three bottles of Propox were missing from the cage. *Id*. ¶ 14. Plaintiff had worked in the cage before the drugs came up missing. *Id*.; Garcia Decl. at 2.

Within the next day, Jessee reviewed hours of video surveillance of the cage area as part of his investigation. Jessee Decl. ¶ 15. His observations suggested to him that Garcia had taken or diverted the controlled substances. *Id*. On July 9, Jessee informed Vice President DePietro about the missing drugs and showed him the surveillance video. DePietro Decl. ¶ 4; Jessee Decl. ¶ 10. After watching the video, DePietro believed that plaintiff had taken the controlled substances. DePietro Decl. ¶ 4.

Jessee then contacted DEA Investigator Glaudel in Sacramento; Glaudel came to the Sacramento Distribution Center around 4:00 p.m. on July 9. Jessee Decl. ¶¶ 17, 18; Declaration of Brian Glaudel (Glaudel Decl.), ECF No. 42 at 2. Glaudel watched the surveillance video, noting that Garcia "was engaging in suspicious behavior" and "may have taken something." Glaudel Decl. at 2. DePietro, Glaudel and Jessee interviewed plaintiff still later that afternoon; plaintiff denied taking anything. DePietro Decl. ¶ 6; Jessee Decl. ¶ 18; Glaudel Decl. at 2; Garcia Decl. at 2. Garcia was suspended after this. Garcia Decl. at 3; Jessee Decl. ¶ 18.

Jessee interviewed a number of other employees on July 18 and 19, but these interviews did not suggest that anyone else had been in the position to take the missing drugs. Jessee Decl. ¶ 22.

On July 22, 2008, DePietro discussed the situation with Rose Todd, Senior Director of Human Resources. Ms. Todd reviewed the surveillance video and told DePietro she believed it showed Garcia taking or diverting controlled substances. DePietro Decl. ¶ 7. Todd told DePietro she believed Garcia's employment should be terminated. *Id.*

Over the next few days, DePietro considered the results of the investigation, the surveillance video and Ms. Todd's opinion that termination was warranted, and then instructed Human Resources Manager Howie to terminate plaintiff's employment. *Id.* ¶ 9. Howie had also reviewed the surveillance video and believed it showed plaintiff taking the controlled substances. Howie Decl. ¶ 19.

On July 29, 2008, Howie sent a letter to Garcia, terminating his employment. Howie Decl. ¶ 21 & Ex. E. At the time Garcia was terminated, Garcia was forty-fifth on the seniority list of 104 union employees; of the 44 employees ahead of him on the list, all were 40 years old or older and five were Hispanic. Howie Decl. ¶ 8 & Ex. A.

Plaintiff filed this action on October 14, 2009.

V. Analysis

Under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin. . . ."

Under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, it is unlawful for an employer "to discharge any individual [who is at least 40 years of age] . . . because of such individual's age. . . ." 29 U.S.C. §§ 623(a)(1), 631(a).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a three-part burden-shifting analysis for Title VII cases: the plaintiff "must carry the initial burden of establishing a prima facie case of . . . discrimination;" the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action in order to meet the prima facie case. *Id.* at 802-04. The burden then returns to the

plaintiff to show that the articulated reason is a pretext "'by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Chuang v. University of California Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)). The presumption of discrimination "drops out of the picture" once the employer meets its burden of production, but "the trier of fact may still consider the evidence establishing plaintiff's prima facie case" in evaluating whether the employer's explanation is pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888-89 (9th Cir. 1990), defendant argues that the *McDonnell Douglas* analysis also applies to ADEA cases. However, in *Gross v. FBL Financial Services*, __ U.S. ___, 129 S.Ct. 2343 (2009), the Supreme Court noted it has "never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now." *Id*. at 2349 & n.2; *see also Reeves*, 530 U.S. at 142. Nevertheless, the court in *Gross* did not explicitly reject the burden-shifting analysis in its ultimate conclusion, that a plaintiff in an ADEA case bears the burden of persuasion to demonstrate that age was the "but-for" cause of the adverse action rather than merely a motivating cause. *Gross*, 129 S.Ct. at 2351.

The Ninth Circuit has not addressed whether *Gross* changes the analysis in ADEA cases. As a judge of the Central District of California has observed, however, "the overwhelming number of other Courts of Appeal, who have addressed the issue, have held that *Gross* does not preclude the application of the *McDonnell Douglas* framework to ADEA claims." *Hill v. The Boeing Company*, ___ F.Supp.2d ___, 2011 WL 658559 at *5 (C.D. Cal. 2011) (collecting cases). This court will follow the lead established in *Hill* and continue to apply *McDonnell Douglas* in ADEA cases, mindful that the plaintiff's burden is to show that he would not have been fired "but for" his age. *Id*. at *7.

/////

A. <u>Prima Facie Case</u>

Under Title VII, a plaintiff must establish a prima facie case of discrimination by showing that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009)(quotation omitted).

In an ADEA case, a plaintiff's prima facie case is similar; he must show that he was

> (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. . . . An inference of discrimination can be established by showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably.

*Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207-08 (9th Cir. 2008) (internal quotation, citation omitted).

On summary judgment, plaintiff's burden of establishing a prima facie case is minimal, not even rising to the level of a preponderance of evidence. *Villiarimo*, 281 F.3d at 1062.

Defendant does not address the first, third or fourth prong of either the Title VII or ADEA prima facie test. Plaintiff's showing on these prongs consists of his declaration, establishing that he is a Mexican male who was over forty years old at the time he was discharged. Garcia Decl. at 1. Plaintiff suggests that other employees who "are not Mexican [men] over 40" have been given second chances when defendant believed they diverted or stole drugs, but as noted above, he has not explained how he knows this or even attempted to identify the other employees. The court will not consider this information. *Villiarimo*, 281 F.3d at 1059 n.5 (rejecting claim that others who misbehaved were not punished because only evidence was

self-serving and uncorroborated declaration and deposition testimony that provided "no indication how [declarant] knows this to be true"). Nevertheless, because defendant does not challenge plaintiff's prima facie showing on these three factors, the court will assume they have been established.

Regarding the second prong of each test, defendant argues that plaintiff cannot establish a prima facie case because he cannot demonstrate he was performing his job satisfactorily given the "abundant evidence" that he was stealing controlled substances. Def.'s Mem. P. & A. in Supp. Mot. for Summ. J., ECF No. 34 at 13-14.

The Ninth Circuit has not been consistent in addressing whether the misconduct that allegedly prompted an adverse employment action may be used to undercut the second factor needed to establish a plaintiff's prima facie case. In *Villiarimo*, the court suggested that the plaintiff may not have produced sufficient evidence on her qualifications for the position when she admitted misconduct that damaged an airplane; the court observed "it is not clear that Villiarimo was performing her job 'well enough to rule out the possibility that [s]he was fired for inadequate job performance.'" 281 F.3d at 1062-63 n.8 (citing *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir.1988)). In *Diaz*, the employer considered job performance, among other things, during a general workforce reduction. 521 F.3d at 1205. The court found that one of the employees had not established the second prong of his prima facie case when he had "over an extended period of time openly violated [defendant's] policy against solicitation on company property . . . ." *Id.* at 1208. The court ultimately concluded that two of the employees who had

/////

/////

/////

/////

/////

/////

established prima facie cases despite damage to the employer's equipment did not present enough evidence of pretext to avoid summary judgment; it observed:

> This conclusion is not inconsistent with the finding that Moreno provided sufficient evidence of satisfactory job performance to avoid summary judgment at the first stage of the *McDonnell Douglas* analysis. The focus of the pretext inquiry is not to determine whether [defendant] was correct in determining that Moreno's job performance was unsatisfactory, but simply whether Moreno's performance was the real reason for the termination.

*Id.* at 1214 n.7.

In *Nicholson*, in contrast, the employer argued that the deficiencies in plaintiff's crew resource management skills, which were the stated reason for the adverse action, meant that plaintiff could not establish she was qualified for the job. The court said:

> This court has long held that subjective criteria should not be considered in determining whether a plaintiff is "qualified" for purposes of establishing a prima facie case under *McDonnell Douglas*. Instead, "[t]he qualifications that are most appropriately considered at step one . . . are those to which objective criteria can be applied.

580 F.3d at 1123 (quoting *Lynn v. Regents of Univ. of Cal.*, 656 F.2d 1337, 1345 n.8 (9th Cir. 1981)). The court continued,

> if such subjective criteria are considered in evaluating plaintiff's qualifications at step one of the *McDonnell Douglas* inquiry, the entire burden-shifting scheme collapses into a single inquiry into the truth of a subjective claim regarding Nicholson's alleged inadequacies. Thus, here as in *Lynn*, the first step must focus on the plaintiff's objectively measurable qualifications.

*Id.* at 1124; *see also High v. Melita USA, Inc.*, 632 F.3d 464, 469-70 (8th Cir. 2011) (rejecting the employer's claim that plaintiff's rules violations showed he was not performing in a satisfactory manner: "the plaintiff should not be tasked with anticipating and disproving his employer's reasons for termination during his prima facie case); *Velez v. Therm King*, 585 F.3d 441, 448 (1st Cir. 2009) (district court "erroneously accepted for purpose of the prima facie analysis Therm King's stated reason for firing Velez as proof that he was not qualified for the . .

. job . . . " and doing so would "deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination"); *Rentzentes v. Sears, Roebuck & Co*., 729 F.Supp.2d 1197, 1202 (D. Haw. 2010) ("in arguing that Rentzentes fails to show that her termination was wrongful by showing, among other things, that she was qualified for her job, Sears is arguing that her lack of qualification is evidenced by the very thing that Sears fired her for doing. This is problematic given the factual dispute over whether Rentzentes did indeed violate company policy.").

Without conclusively resolving the tension between these two lines of cases, the court notes that in *Villiarimo* and *Diaz*, the misconduct that defeated the plaintiffs' prima facie cases was not disputed, while in *Nicholson*, *High*, *Venez* and *Rentzentes*, the employees challenged the claims of misconduct, as does the plaintiff in this case. Garcia Decl. at 2. In the face of plaintiff's denial, the court declines to find that defendant's belief that plaintiff had stolen drugs defeats the second prong of plaintiff's prima facie case. Plaintiff has met his minimal burden of establishing his prima facie case with respect to both of his remaining claims.

B. Reason For Discharge

Defendants contend they terminated plaintiff because they believed he had stolen drugs on two occasions. This is a legitimate, non discriminatory reason for the discharge. *See Crews v. Trustees of Columbia University*, 452 F.Supp.2d 504, 523 (S.D.N.Y. 2006) (theft is a legitimate, non discriminatory reason to discharge an employee). However, "[w]hile [the employer] may decide that participation in a theft . . . may render an employee unqualified for employment, this criterion must 'be applied alike to members of all races,' and Title VII is violated if . . . it was not." *McDonald v. Santa Fe Trail Transportation Company*, 427 U.S. 273, 283 (1976).

C. Pretext

Once the employer has proffered a legitimate reason for the discharge, the burden shifts back to the plaintiff to raise a genuine issue of material fact as to whether this reason was a

pretext for discrimination. This burden may be met "'directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Villiarimo*, 281 F.3d at 1062. This showing may be made by "specific and substantial" circumstantial evidence. *Id*.

Plaintiff suggests that the reason for his termination is false, offering his own declaration that he has never stolen drugs from Amerisource Bergen. Garcia Decl. at 2. However, in evaluating the justification, "courts only require that an employer honestly believed its reasons for its actions . . ." even if those reasons are ultimately baseless. *Id*.; *see also Diaz*, 521 F.3d at 1214 n.7 ("the focus of the pretext inquiry is not to determine whether [defendant] was correct in determining that Moreno's job performance was unsatisfactory, but simply whether Moreno's performance was the real reason for the termination"). Plaintiff points to defendant's exaggerated characterization of Glaudel's evaluation of plaintiff's actions, as captured on the video surveillance, as evidence undercutting its reasonable belief. Opp'n at 5. While the defendant's description of Glaudel's reaction to the video does differ from Glaudel's declaration, this difference is insufficient to preclude summary judgment in light of Jessee's and DePietro's observations and stated beliefs that the surveillance video demonstrated plaintiff's theft. Plaintiff has not raised a disputed issue of fact as to defendant's honest belief in the reason for plaintiff's termination.

Plaintiff also suggests that defendant did not treat all employees accused of theft equally, but rather gave second chances to those who were not "old Mexican guy[s]," and similarly failed to question other employees, "including young and pretty girls," who had worked in the cage during the relevant time periods. Opp'n at 5; Garcia Decl. at 3. Plaintiff's only evidence, however, is his own declaration, which does not disclose the basis of his purported knowledge that others had been given second chances or had worked in the cage at the relevant time periods. His unsupported averments are insufficient to raise a disputed issue of fact as to the pretextual nature of defendant's reasons for termination.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (ECF No. 33) is granted.

DATED: May 20, 2011.

UNITED STATES DISTRICT JUDGE

2/garc3432.msj